[Docket Nos. 8, 23, 28]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| BANNER LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JAMES G. GORMAN, III, NATHAN GORMAN, and MELISSA PEREEN,<br><br>Defendants. | No. 26-CV-369 (RMB) (MJS)<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge**

Possession is nine-tenths of the law, or so the adage goes, but what happens when two people lay claim to property that neither possesses? This case examines the federal interpleader statute, a unique procedural device designed by Congress specifically to address this scenario by consolidating competing claims in a single federal forum.

Dr. James Gorman, Jr. passed away in August 2025 leaving behind two children, an ex-wife, and a long-time girlfriend. Dr. Gorman's children, Defendants James Gorman III and Nathan Gorman (the "Gorman Children"), challenge the distribution of Dr. Gorman's life insurance policy (the "Policy") issued by Plaintiff Banner Life Insurance Company. The Gorman Children object to Banner Life distributing any Policy benefits to Defendant Melissa Pereen, Dr. Gorman's long-time girlfriend. Pereen claims she is a proper beneficiary and must be paid to effect Dr.

Gorman's wishes. Banner Life filed this lawsuit to consolidate those competing claims in one action.

But it was a little too late to prevent ***all*** litigation surrounding the Policy. The Gorman Children filed a caveat (the "Probate Action") in the Gloucester County Superior Court, Probate Part (the "Probate Court") in August 2025, shortly after their father passed away. The Probate Action challenges the validity of the beneficiary designation form Dr. Gorman allegedly executed in 2025 (the "2025 BDF") naming Pereen as a Policy beneficiary. Despite the pending Probate Action, Banner Life asks the Court to (1) act as a receiver for the disputed Policy benefits and (2) issue a declaratory judgment naming the true beneficiaries of the Policy. [Docket No. 1 at 5–6.] To that end, it brings a single claim for interpleader relief under 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22. [*Id.* at 3.]

To effect that relief, Banner Life moves the Court to deposit its contractual liability, [Docket No. 8], and for an injunction restraining any distribution of Policy proceeds in the Probate Court, [Docket No. 23]. Also pending is Pereen's motion to stay this matter pending resolution of the Probate Action. [Docket No. 28.] Given the competing claims to the interplead fund, here the Policy benefits, the Court grants Banner Life's motion to deposit. But because the identity of the proper beneficiaries turns on the Probate Action's outcome, the Court otherwise stays the case (save for a few administrative matters discussed below), including the Gorman Children's counterclaims.

## I. FACTUAL BACKGROUND

The following facts are taken from the pleadings as well as the record in the Probate Action—which the Court may judicially notice and consider at the motion to dismiss stage. *In re Congoleum Corp.*, 426 F.3d 675, 679 n.2 (3d Cir. 2005) (taking judicial notice of actions in underlying New Jersey state court action).

### A. The Gorman Family.

Dr. Gorman ran a successful ophthalmological and surgical practice in Voorhees, New Jersey, for most of his adult life. [Probate Action, Compl. ¶¶ 8, 43–45.] He married Patricia Gorman, and together, they had two boys: James III and Nathan.[1] But 2014 marked a year of turmoil for the Gorman family. Dr. Gorman and Patricia's marriage ended after years together building a family and raising children. [*Id.* ¶ 9.] To comply with a term in the property settlement agreement ("PSA") prepared for their divorce, Dr. Gorman made Patricia a $500,000 beneficiary of the Policy, which has a $3 million death benefit. [*Id.* ¶ 37.] The remaining $2.5 million was to be split equally between the Gorman Children. [Docket No. 43 at 73.] Dr. Gorman's estate plan did not provide for Patricia otherwise.

In 2017, Dr. Gorman's life profoundly changed again: Doctors diagnosed him with stage IV thymic cancer. Despite its severity, Dr. Gorman fought his cancer for over eight years, still performing surgery for many of his patients. In July 2025,

---

[1] Given this is an intra-familial dispute, the Court uses first names for certain members of the Gorman family to avoid confusion.

James III found Dr. Gorman in distress, and medical personnel rushed him to the hospital. [*Id.* ¶ 41.] After a month-long hospitalization, Dr. Gorman died on August 11, 2025. [Probate Action, Compl. ¶¶ 39(e)–(f).]

**B. Melissa Pereen.**

Pereen began working for Dr. Gorman at his medical practice in 2015. [Probate Action, Pereen Answer ¶ 24.] The timing is imprecise, but around the same time Dr. Gorman started to date Pereen, and they enjoyed an on-again, off-again relationship for years. [*Id.*] The two stopped seeing each other for the last time in June or July 2025—weeks before Dr. Gorman's death. [Probate Action, Compl. ¶¶ 2, 39(c)–(d).]

**C. Dr. Gorman's estate planning documents.**

Shortly after his initial diagnosis in 2017, Dr. Gorman hired David Avedissian, Esq. and his law firm to prepare estate planning documents. [*See* Probate Action, Compl. ¶¶ 11, 35.] In 2019, Dr. Gorman amended his estate plan to add Pereen as a one-third beneficiary of his Will.[2] [*Id.* ¶ 31.] In April 2025, Dr. Gorman allegedly signed the 2025 BDF changing the Policy's beneficiary designations to (1) continue the PSA-mandated $500,000 for Patricia and (2) create a similar distribution structure to the 2019 Will—writing Pereen in as a roughly one-third beneficiary with James III and Nathan for the remaining Policy benefits. [Docket No. 43 ¶ 49.] Avedissian faxed

[2] The Gorman Children challenge the validity of the 2019 Will in both the Probate Action and a malpractice action they filed against Avedissian in this Court. *See Gorman v. Avedissian*, No. 26-CV-4278 (D.N.J. *compl. filed* Apr. 22, 2026); [Probate Action, Compl. ¶¶ 30–34, 47].

the 2025 BDF to Banner Life twice, first in April after it was signed and again on August 12 after Dr. Gorman died. [*Id.* at 82 (Avedissian cover letter to Banner Life).]

The 2025 BDF raises two questions apart from the undue influence and fraud allegations raised by the Gorman Children in the Probate Court. First, although the 2025 BDF maintains the $500,000 death benefit ***amount*** for Patricia, it altered the benefit ***percentage*** from 16.67% to 20%—a 3.33%, or nearly $100,000, increase.[3] [Docket No. 1-3 at 2.] The 2025 BDF also lists dollar amounts that do not add up to the Policy's $3 million value. [*Id.*] The Court will determine who is entitled to the Policy proceeds during step two of the interpleader analysis. *See* discussion *infra* Section IV.C. Second, Avedissian faxed the 2025 BDF to Banner Life ***the day after Dr. Gorman died***. [Docket No. 43 ¶ 49.] The Gorman Children argue that even if the 2025 BDF were not the product of any nefarious conduct, it was nevertheless a breach of the Policy's terms for Banner Life to ***accept*** the 2025 BDF after Dr. Gorman passed away. [*Id.* ¶¶ 73, 77.]

## II. PROCEDURAL BACKGROUND

Only snippets from the Probate Action appear in this Court's record, but the Court nonetheless gleaned the salient facts. Days after Dr. Gorman died, the Gorman

---

[3] The parties later stipulated that the change in percentage was a clerical error, and the correct amount due to Patricia is $500,000 pursuant to the PSA. [Docket No. 72 at 31:6–13.] This question is thus resolved. *See* discussion *infra* Section II. However, the Court still notes the inconsistencies as they may later impact the contractual validity of the 2025 BDF.

Children filed a caveat with the Probate Court protesting (1) the admission of any will to probate purporting to be Dr. Gorman's and (2) the appointment of an executor or personal representative to manage Dr. Gorman's estate. [Docket No. 28-2 at 48.] Within the same month, the Gorman Children filed a complaint for undue influence and fraud in the Probate Court naming Pereen as a defendant. [Probate Action, Compl. ¶ 7.] They brought claims to set aside the 2019 Will and 2025 BDF, [*id.* ¶ 1], as well as claims seeking the appointment of one or both Gorman Children as executor; requesting an accounting; and alleging Pereen tortiously interfered with the Gorman Children's inheritance, [*id.* ¶¶ 55, 66, 69].

Banner Life initiated this action by filing its complaint on January 13, 2026. [Docket No. 1.] Next it filed a motion to deposit its admitted contractual liability under the Policy, [*id.* No. 8], and finally it filed a motion for an injunction asking this Court to restrain the Probate Court from disposing of the life insurance proceeds, [*id.* No. 23]. Defendants filed a variety of responses to Banner Life's Complaint and motions.

Starting with the Complaint, the Gorman Children answered and assert two counterclaims. [Docket No. 43.] They request a declaratory judgment that the 2025 BDF is invalid, [*id.* ¶ 68], and they claim Banner Life violated the Policy's terms when it accepted the 2025 BDF after Dr. Gorman passed away, [*id.* ¶¶ 72–73, 78]. Patricia answered the complaint and brought a counterclaim against Banner Life and a crossclaim against Pereen. [Docket No. 38.] Both of Patricia's claims request the

same declaratory relief: naming Patricia a proper Policy beneficiary and ordering that Pereen is not. [Docket No. 38 ¶¶ 17–19.]

Pereen's Answer is missing, however. Pereen asked for a second extension of time to answer the Complaint after Patricia asserted a crossclaim against her, [Docket Nos. 18, 63], which the clerk granted, making Pereen's answer due May 19. However, it appears Pereen overlooked filing her Answer among the flurry of other replies, oppositions, and supplements due at around the same time in mid-May. Given the numerous overlapping and competing deadlines from that time, the Court **grants Pereen leave to file her answer out of time, within fourteen days of this opinion.**[4]

Moving to the mid-May flurry, the filings fall into one of three categories: (1) responses to Banner Life's motions to deposit and for an injunction, (2) Banner Life's responses to counterclaims raised against it, and (3) Court-requested supplemental briefing regarding the probate exception to this Court's subject-matter jurisdiction to ensure that doctrine does not interfere with Banner Life's request for interpleader relief. Among those filings is Pereen's motion to stay this case pending the outcome of the Probate Action. [Docket No. 28.]

[4] The Court also notes Pereen filed a motion to dismiss. [Docket No. 41.] The Court administratively terminated Pereen's motion for failure to submit a pre-motion letter pursuant to this Court's individual policies and preferences. [*Id.*, Docket No. 45.] Pereen did not file a pre-motion letter, and instead made the extension request found at Docket No. 63.

Finally, Patricia, her crossclaim, and her counterclaim have been dismissed from this action. On top of the filings in May, the Court held a status conference on May 11, 2026. [Docket Nos. 66, 72.] At the hearing, the parties stipulated to the following facts:

1. Patricia's share under the original terms of the Policy was 16.67% or $500,000. [*Id.* at 30:24–31:1.]

2. This amount is specifically contemplated by Patricia and Dr. Gorman's property settlement agreement ("PSA") executed as a part of their divorce. [*Id.* at 30:2–9.]

3. The 2025 BDF changes the percentage due to Patricia to 20%, but in a parenthetical notation listed alongside the percentage, it designates the original dollar amount—$500,000. [*Id.* at 30:21–31:8.]

4. Given the PSA's terms, the error is merely clerical, and Patricia is entitled to $500,000 regardless of the 2025 BDF's validity. [*Id.* at 31:6–13 (Patricia's counsel offering the error was clerical); 31:20–24 (Gorman Children's counsel concurring); 31:25–32:2 (Pereen's counsel agreeing).]

Given all the parties agreed on the amount of the Policy's benefit due to Patricia, the Court instructed the parties to prepare a stipulation of dismissal to release Patricia from this action, dismiss her counterclaims, and simplify the litigation. [*Id.* at 32:3–6.] The parties filed those stipulations earlier this week on September 28, 2026, [Docket No. 79], which the Court approved prior to issuing this opinion, [Docket No. 80].

## III. LEGAL STANDARDS

Individuals and organizations occasionally act as custodians of another person's property. These "stakeholder plaintiffs" are often insurance companies who have yet to distribute accrued benefits of an insurance policy. *See, e.g.*, *Andrews v. Holloway*, 2022 WL 6818758, at *2 n.1 (D.N.J. Oct. 11, 2022) (citing *Metro. Life Ins. Co. v. Price*,

501 F.3d 271, 275 (3d Cir. 2007)). When multiple parties claim ownership of the held property, stakeholder plaintiffs may ***offensively*** file an interpleader action against all claimants to resolve their competing claims in one lawsuit, *id.*, which is preferable to ***defending*** multiple claims and risking inconsistent or multiple judgments regarding the same property, *City of Englewood v. Ezekwo*, 2021 WL 2390087, at *2 (D.N.J. June 11, 2021) (citing *Metro. Life*, 501 F.3d at 275). "Interpleader allows the stakeholder to [admit liability,] file suit, deposit the property with the court, and withdraw from the proceedings. The competing claimants are left to litigate between themselves." *Metro. Life*, 501 F.3d at 275 (citing Zechariah Chaffee, Jr., *The Federal Interpleader Act of 1936: I*, 45 Yale L.J. 963, 963 (1936)). "The result is a win-win situation. The stakeholder avoids multiple liability. The claimants settle their dispute in a single proceeding, without having to . . . face finding assets and levying execution." *Id.* (internal quotation marks and citation omitted).

Stakeholder plaintiffs may rely on statutory interpleader, 28 U.S.C. § 1335, or rule interpleader, Fed. R. Civ. P. 22, to join all claimants together, *Metro. Life*, 501 F.3d at 275. Section 1335 bakes its own subject-matter jurisdiction into statutory interpleader, requiring minimally diverse claimants and an amount in controversy over five hundred dollars. *Metro. Life*, 501 F.3d at 275 (citing *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530–31 (1967)). Rule interpleader is solely a procedural device and requires an independent basis of subject-matter jurisdiction. *Id.* (*citing NYLife Distrib., Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 372 n.1 (3d Cir. 1995)).

Interpleader actions proceed in two distinct stages. *NYLife*, 72 F.3d at 375. ***First***, the court determines whether the interpleader complaint was properly brought, *i.e.*, the court has subject-matter jurisdiction, two or more claimants are adverse, and the stakeholder admits its liability. *See, e.g.*, *Prudential Ins. Co. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009); *Ezekwo*, 2021 WL 2390087, at *3. If the action is properly brought, the court may dismiss the stakeholder from the suit. *Prudential*, 553 F.3d at 262. But a court cannot dismiss a stakeholder when counterclaims allege it "created [the] circumstances in which there were competing claims[.]" *Metro. Life Ins. Co. v. Teixeira through Sarto*, 2017 WL 3951597, at *4 (D.N.J. Sep. 8, 2017) (internal quotation marks omitted) (quoting *Hovis*, 553 F.3d at 263). ***Second***, the court "actually adjudicates the defendants' adverse claims to the interpleaded fund." *NYLife*, 72 F.3d at 375 (citing *N.Y. Life Ins. Co. v. Conn. Dev. Auth.*, 700 F.2d 91, 95 (2d Cir. 1983); 7 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1714 (3d ed., West Apr. 2026 update)).

## IV. DISCUSSION

The Court grants Banner Life's motions to deposit and for an injunction—although not as broad an injunction as Banner Life requested. The Court will only enjoin the parties from litigating the proper distribution of the Policy's benefits. The Court declines to enjoin the parties from litigating the 2025 BDF's ***validity*** in the Probate Court. That court is considering similar allegations surrounding the 2019 Will. The overlapping allegations and issues make the Probate Court the appropriate

venue to litigate the 2025 BDF's validity. It also grants Pereen's motion to stay until the Probate Court completes its review. Once it does, this Court will proceed to step two of the interpleader analysis and address the Gorman Children's counterclaims.

### A. Banner Life "properly brought" this interpleader action.

The Court has subject-matter jurisdiction under § 1335 and need not address rule interpleader. The Claimant Defendants are minimally diverse:[5] James is a citizen of Pennsylvania, Nathan is a citizen of New York, and both Patricia and Pereen are citizens of New Jersey. [Docket No. 1 ¶¶ 1–5.] The Policy has a cash value of $3 million, [*id.* ¶ 12], exceeding the required amount in controversy, § 1335. Banner Life demonstrates the other functional requirements to interpleader relief as well. It admits its contractual liability under the Policy, and the Gorman Children are adverse to Pereen; both claim ownership of the Policy benefits assigned to Pereen under the 2025 BDF. As a result, at step one, the Court grants Banner Life's motion to deposit.

### B. Banner Life shall deposit its admitted $2.5 million liability into the Court's registry, but the Court cannot dismiss Banner Life from the action at this stage.

The parties stipulate and agree Banner Life paid Patricia her $500,000 share of the Policy's proceeds. [Docket Nos. 79, 80.] As a result, Banner Life's admitted contractual liability has decreased from $3 million to $2.5 million. The Court orders

---

[5] Banner Life's citizenship is not a part of the diversity calculus under § 1335, which requires minimal diversity among ***claimants***. 28 U.S.C. § 1335(a)(1); *NYLife*, 72 F.3d at 375; *Watson v. Manhattan and Bronx Surface Transit Operating Auth.*, 487 F. Supp. 1273, 1276 (D.N.J. 1980).

Banner Life to pay the remaining $2.5 million of its admitted contractual liability under the Policy into the Court's registry within the next forty-five days.

The final part of step one's triage is assessing whether to dismiss Banner Life from this matter. The Court cannot. The Gorman Children assert counterclaims against Banner Life for its conduct ***creating the competing claims***. *Teixeira*, 2017 WL 3951597, at *4. They allege Banner Life breached its life insurance contract with Dr. Gorman by accepting the 2025 BDF after his death. [Docket No. 43 at 61.] The Court may reach this question in due course depending on the Probate Court's holding regarding the 2025 BDF, *see* discussion *infra* Sections IV.C–D, but the Gorman Children's counterclaims prevent dismissing Banner Life from the action now. *Hovis*, 553 F.3d at 263; *Teixeira*, 2017 WL 3951597, at *4.

### C. The Court stays distribution of the Policy benefits and declaratory relief under interpleader step two.

Once Banner Life deposits its admitted liability, the Court declines to take any further action until the Probate Court assesses the 2025 BDF's validity. The Probate Action is already adjudicating the threshold question of whether the 2025 BDF is the product of fraud or undue influence. District courts may stay interpleader actions in favor of substantially similar state court proceedings. *NYLife*, 72 F.3d at 382. The rigid "exceptional circumstances" test enunciated in *Colorado River Water Conservation District v. United States* does not control—instead the far more lenient *Brillhart* discretionary standard applied to declaratory judgment actions applies to stays in interpleader actions. *NYLife*, 72 F.3d at 382–83 (citing *Brillhart v. Excess Ins. Co.*, 316

U.S. 491, 495 (1942)). Because declaratory judgment actions are by their very nature discretionary, a district court has substantial discretion to stay a declaratory judgment matter since it is under no obligation to exercise jurisdiction at all. *Brillhart*, 316 U.S. at 495. Interpleader actions are similarly discretionary, and thus, district courts have the same wide latitude to stay interpleader actions since they are under no obligation to hear them. *Id.* at 382 ("Congress was more interested in providing an opportunity to litigants to resolve disputes, than in creating a duty in the district courts to exercise the jurisdiction given them therein.").

The Court chooses to exercise its discretion to stay the case. There are two paths forward at step two. First, if the 2025 BDF is invalid, the Court's path is straightforward: order distribution of the remaining $2.5 million (after Patricia's $500,000) to the Gorman Children 50/50 under the distribution plan from 2014. Or, second, if the 2025 BDF is valid, then the Court will address the form's inaccurate percentage and dollar amount calculations (including, depending on the Policy's terms, the 2025 BDF's contractual invalidity), *see* discussion *supra* Section I.C, and address the Gorman Children's counterclaims described immediately below. This Court could decide which path to take now, but doing so risks taking a position that is inconsistent with the Probate Court's future decision. Instead, deferring to the Probate Action allows (1) the Probate Court to make that threshold determination of undue influence and fraud (or lack thereof) and (2) this Court to proceed based on it.

Banner Life urges the Court to issue an injunction enjoining the parties from litigating the 2025 BDF in the Probate Court ***at all*** instead, beaming the entire 2025 BDF dispute up to federal court. [Docket No. 23-2 (Banner Life's proposed order).] But the Probate Action is well into discovery, and judicial economy counsels allowing that train to arrive at the station instead of being stopped in its tracks. *NYLife*, 72 F.3d at 382 (citing *Brillhart*, 316 U.S. at 495) (staying an interpleader action may be appropriate if it avoids needlessly duplicative litigation). Other courts come to the same conclusion and allow state court proceedings to play out before finalizing interpleader distribution. *See, e.g.*, *id.*; *New York Life Ins. Co. v. Burns*, 2022 WL 1504950, at *4 (D.N.J. May 12, 2022) ("[A] stay appropriately balances all competing interests between respecting judicial economy, avoiding duplicative litigation of the same issue, allowing the state court to decide domestic legal issues . . . and faithfully carrying out the Court's statutory duty under § 1335."); *Protective Life Ins. Co. v. Kallel*, 2024 WL 202112, at *7 (S.D. Cal. Jan. 18, 2024). The Court exercises its discretion under *Brillhart* to stay the case in favor of that economy.

**D. The Defendants' counterclaims are also stayed.**

The Gorman Children brought counterclaims for declaratory judgment and breach of contract. Their first counterclaim requests an order declaring the 2025 BDF is invalid and that the prior distribution structure—excluding Pereen—controls. The second challenges Banner Life's acceptance of the 2025 BDF. The Gorman Children claim Banner Life violated the Policy's terms because Dr. Gorman died before Banner

Life received the 2025 BDF and because it accepted a facially deficient beneficiary designation form (*i.e.*, the percentages and dollar amounts do not add up). As a result, they argue, Banner Life is not entitled to any fees or costs for initiating and prosecuting this matter. [Docket No. 43 ¶ 68.] The Court also stays those counterclaims until the Probate Court determines whether the 2025 BDF is valid for the same reasons as pressing pause on interpleader step two.

**E. The Court grants the motion for an injunction under § 2361 in part.**

Banner Life moved for an injunction enjoining the Probate Court from deciding the validity of the 2025 BDF. The interpleader statute enjoys its own supplemental injunctive provisions. 28 U.S.C. § 2361. It allows federal courts to enjoin "claimants . . . from instituting or prosecuting any proceeding in any State or United States court affecting the property [at issue]." *Id.* That authority is one of the few instances where a federal court may inject itself into an ongoing state court proceeding. *Mitchum v. Foster*, 407 U.S. 225, 234 (1972) (citing *id.*); *U.S. Steel Corp. Plan for Emp. Ins. Benefits v. Musisko*, 885 F.2d 1170, 1176 n.3 (3d Cir. 1989); *see also, e.g.*, *JPMorgan Chase Bank, N.A. v. Neu*, 2017 WL 2290142, at *3, *6 (D.N.J. May 24, 2017) (enjoining two state court actions to consolidate interpleader action in federal court). And "[c]ourts have extensive discretion under Section 2361 with regard to the issuance and the scope of the order." *Neu*, 2017 WL 2290142, at *3 (internal quotation marks omitted) (quoting *Orseck, P.A. v. Servicios Legales de Mesoamerica S. de R.L.*, 669 F. Supp. 2d 1344, 1351

(S.D. Fla. Mar. 22, 2010)); 7 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1717 (3d ed., West Apr. 2026 update).

The Court will issue an injunction restraining the parties from litigating the proper Policy beneficiaries or to whom the Policy's proceeds should ultimately be distributed. However, the Court ***does not*** restrain the parties from litigating the validity of the 2025 BDF in the Probate Action—specifically the form's validity based on its ***execution***, *i.e.*, whether it was the product of fraud or undue influence. The Probate Court may, and because this Court defers to its judgment, ***should*** continue to evaluate the undue influence and fraud questions, and the parties may actively litigate those issues in the Probate Court.

* * * * * * * *

## V. CONCLUSION

For the foregoing reasons:

- Banner Life's motion to deposit funds, [Docket No. 8], is **GRANTED**; Banner Life shall deposit $2.5 million with the Court's registry within forty-five (45) days of the order accompanying this opinion;

- Banner Life's motion for an injunction, [*id.* No. 23], is **GRANTED in part** and **DENIED in part**;

- Pereen is granted fourteen (14) days from this order to answer Banner Life's Complaint out of time; and

- Pereen's motion to stay, [*id.* No. 28], including the Gorman Children's counterclaims, is **GRANTED**. Upon Banner Life's deposit of its admitted liability in the Court's registry and the filing of Pereen's Answer, this matter is **STAYED** until further order of this Court.

An accompanying order shall follow.

September 30, 2026
Date

**/s/ Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge